**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance For Community Health Centers, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>Arizona Health Care Cost Containment System, et al.,<br><br>  Defendants. | No. CV-19-00517-TUC-JGZ<br><br>**ORDER** |

Plaintiffs are federally-qualified health centers (FQHCs) in Arizona and their trade association, Arizona Alliance for Community Health Centers (Arizona Alliance), who allege that Arizona's Medicaid agency, the Arizona Health Care Cost Containment System (AHCCCS), and its Director violate the Medicaid Act, 42 U.S.C. § 1396a(bb), by failing to reimburse FQHCs 100% of their reasonable and related costs in furnishing services of dentists, podiatrists, optometrists, and chiropractors to Medicaid beneficiaries (the Services). (Doc. 1, ¶¶ 21, 52-53.)

Pending before the Court are Defendants' Motion to Dismiss (Doc. 18) and Plaintiffs' Motion for Preliminary Injunction.[1] (Doc. 9).  The parties agree that this action

---

[1] On February 18, 2021, Plaintiffs filed a Motion for Leave to Supplement Plaintiffs' Motion for Preliminary Injunction. (Doc. 48.) Plaintiffs seek to file the Declaration of Shawn Frick, Chief Executive Officer of Arizona Alliance, who opines that FQHCs will experience an increase in demand for the Services after patients, who have been foregoing primary care services due to the risk of COVID-19, become vaccinated. The Court will deny the motion to supplement. Any increase in demand for FQHC services is not material to the question presented by the parties which is whether AHCCCS is required to cover the Services.

presents legal issues with no material dispute of fact. (Doc. 18, p. 14; Doc. 9, p. 21.) On September 4, 2020, the Court heard oral argument on the motions. Upon consideration of the parties' motions, oppositions and replies thereto, oral argument, and the record in this case, the Court will grant in part Defendants' Motion to Dismiss and deny Plaintiffs' Motion for Preliminary Injunction.

**I.    Discussion**

    **A.    Coverage Requirements under Medicaid Act**

The Medicaid Act requires state Medicaid plans to include:

> Federally-qualified health center services (as defined in subsection ($l$)(2))[2] and any other ambulatory services offered by a Federally-qualified health center and which are otherwise included in the [state Medicaid] plan.

42 U.S.C. § 1396d(a)(2)(C). "Federally-qualified health center services" include physicians' services. 42 U.S.C. §§ 1396d($l$)(2), 1395x(aa)(1). In *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007 (9th Cir. 2013) (*Douglas*), the Ninth Circuit held that for purposes of § 1396d(a)(2)(C), the definition of "physician" includes doctors of medicine and osteopathy, dentists, podiatrists, optometrists, and chiropractors. *Id.* at 1016-17.

In *Douglas*, an association of rural health clinics and a federally qualified health center challenged a 2009 California statute that "eliminat[ed] certain Medi-Cal[3] benefits that the state deemed optional, including adult dental, podiatry, optometry and chiropractic services." *Id.* at 1010. The issue in *Douglas* concerned "which source of law—Medicaid or Medicare—defines 'physicians' services' with respect to" FQHCs and rural health clinics. *Id.* at 1015. The state argued that services provided by dentists, podiatrists, optometrists and chiropractors were not "physicians' services" because the Medicaid Act defines "physicians' services" only as those services provided by doctors of medicine or

---

[2] "[S]ubsection ($l$)(2)" refers to 42 U.S.C. § 1396d($l$)(2). Section 1396d($l$)(2)(B) defines "Federally qualified health centers" as entities that receive a federal grant under Section 330 of the Public Health Service Act to provide health care and related services to medically underserved areas or populations.

[3] Medi-Cal is California's Medicaid program. https://www.dhcs.ca.gov/services/medi-cal/pages/whatismedi-cal.aspx

osteopathy. *Id.* at 1015-16. The plaintiffs argued that the more expansive Medicare definition of "physicians' services," which includes doctors of medicine or osteopathy, dentists, podiatrists, optometrists, and chiropractors, should control. *Id.* at 1015. The Ninth Circuit agreed with the plaintiffs, deciding that the term "physician" must be defined according to the Medicare definition. *Id.* at 1016-17. Applying Medicare's definition, *Douglas* concluded that the physicians' services for which FQHCs must be reimbursed include services furnished by doctors of medicine and osteopathy, dentists, podiatrists, optometrists, and chiropractors. *Id.* From this, *Douglas* held that California's complete elimination of coverage for adult dental podiatry, optometry, and chiropractic services in FQHCs and rural health clinics violated the Medicaid Act.

### B. Coverage of the Services under AHCCCS

The parties agree that Arizona's Medicaid plan covers the following dental, podiatry, optometry, and chiropractic services:

- Dental services for children under 21 and limited emergency and non-emergency dental services for elderly and developmentally disabled beneficiaries in long-term care facilities. (Doc. 1, ¶ 27; Doc. 28, ¶ 27; Doc. 18, p. 9.) Emergency dental services for adults (such as medically necessary extraction or treatment for an acute infection) up to $1,000 per year. (Doc. 1, ¶¶ 27, 30, 56; Doc. 28, ¶¶ 27, 30, 56; Doc. 18, p. 9.)

- Adult podiatry services if those services are ordered by a primary care provider and the authorization is documented in the medical record. (Doc. 1, ¶ 32; Doc. 28, ¶ 32; Doc. 18, p. 9.)

- Optometry services for "[r]outine and medically necessary vision services, including examinations and the provision of prescriptive lenses" for beneficiaries under the age of 21. (Doc. 1, ¶ 33; Doc. 28, ¶ 33.) For adults, examination and treatment of medical conditions of the eye, and prescriptive lenses only when used as the sole prosthetic device following cataract surgery. (Doc. 1, ¶ 33; Doc. 28, ¶ 33; Doc. 18, p. 9.)

● Chiropractic services for children under 21 years of age.[4]  (Doc. 1, ¶ 35; Doc. 28, ¶ 35; Doc. 18, p. 9.)

**C.   Arguments**

On October 29, 2019, Plaintiffs filed a Motion for Preliminary Injunction.  (Doc. 9.) Plaintiffs request that the Court enter "an order compelling AHCCCS to cover all (dental, podiatric, optometric, and chiropractic) services provided" by plaintiffs and non-plaintiff FQHCs to Medicaid beneficiaries.  (*Id.* at p. 22; *see also* Doc. 9, p. 30; Doc. 45-1, p. 2.) On November 25, 2019, Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim as a matter of law.  (Doc. 18.)  The parties present the same arguments in support of and opposition to the two motions.

Citing *Douglas,* Plaintiffs contend that Arizona's failure to pay for 100% of the Services violates an unambiguous requirement of 42 U.S.C. § 1396d(a)(2)(C).  Plaintiffs argue that the Ninth Circuit's decision in *Douglas* is dispositive of their claim for 100% reimbursement because *Douglas* held that states must pay for these mandatory Services. (Doc. 9, pp. 6-7, 21-23; Doc. 25, pp. 6-7, 12-15; Doc. 33, p. 5.)

Defendants argue that section 1396d(a)(2)(C) does not unambiguously require states to reimburse FQHCs for 100% of the Services.  Defendants assert that states are only obligated to cover FQHC services that are included in the state Medicaid plan.  Defendants point to language in section 1396d(a)(2)(C) requiring states to cover FQHC Services "and any other ambulatory services offered by a [FQHC] and which are otherwise included in the [state Medicaid] plan."  Defendants contend that the phrase "otherwise included in the plan" requires states to cover only those FQHC services that the state chooses to include in the state Medicaid plan.  (Doc. 18, pp. 5-6; Doc. 26, pp. 2-4; Doc. 29, pp. 4-5; Doc. 46, p. 2.)

Defendants also argue that *Douglas* did not address the issues in this case and that

---

[4] The parties agree that the covered chiropractic services are required as Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) services.  (Doc. 1, ¶ 35; Doc. 28, ¶ 35; Doc. 18, p. 9.)  EPSDT services are among the mandatory categories of medical assistance.  *Katie A., ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1154 (9th Cir. 2007) (citing  42 U.S.C. § 1396d(a)(4)(B)).

Arizona does not, as Plaintiffs claim, "categorically exclude" any dental, podiatry, optometry or chiropractic services provided by FQHCs.[5] (Doc. 46, p. 2.) Instead, the state covers these services but with limitations. (*Id.*)

The Court does not accept Defendants' interpretation of § 1396d(a)(2)(C), but the Court agrees with Defendants' argument that Arizona may cover the Services with limits without violating the Medicaid Act or *Douglas*.

## II.     Analysis

### A.     Section 1396d(a)(2)(C) does not support dismissal of the Complaint

Section 1396a(a)(10)(A) of the Medicaid Act identifies categories of services that states must cover in order to participate in the Medicaid program. 42 U.S.C. § 1396a(a)(10)(A). The Medicaid Act also identifies services that states may choose, but are not obligated, to cover (optional services). *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a). Among the services that states must cover are "Federally-qualified health center services (as defined in subsection (*l*)(2)) and any other ambulatory services offered by a Federally-qualified health center *and which are otherwise included in the [state Medicaid] plan*." 42 U.S.C. § § 1396a(a)(10)(A), 1396d(a)(2)(C) (emphasis added). The section 1396d(a)(2)(C) language is at issue here.

Defendants assert that the phrase "which are otherwise included in the plan" modifies both "Federally-qualified health services," and "any other ambulatory services offered" by a FQHC, thus requiring states to cover only those FQHC services and ambulatory services that the state choses to include in the state Medicaid plan. Defendants conclude that Medicaid does not require that Arizona cover any of the FQHC Services that are not included in Arizona's AHCCCS plan. The Court disagrees with Defendants' reading of the statute.

Defendants' construction of section 1396d(a)(2)(C) would enable a state to categorically exclude all coverage for all FQHC services. This construction is contrary to the plain language and purpose of the statute. The Court must "interpret [a] statut[e] as a

---

[5] At oral argument, Defendants agreed that states cannot categorically exclude mandatory services.

whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (internal quotation marks and citation omitted). "Additionally, [p]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme. *Id.* (internal quotation marks and citation omitted).

The Medicaid Act specifically mandates services that states must cover. Under 42 U.S.C. § 1396a(a)(10)(A) of the statute, a state plan must provide for "making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), . . . of section 1396d(a) of this title . . . ." Section 1396d(a)(2)(C) lists two types of services: (1) "Federally-qualified health center services" and (2) any other ambulatory services offered by a FQHC. If the phrase "which are otherwise included in the plan" modified both services listed in section 1396d(a)(2)(C), neither service would be mandated for state coverage, unless the state opted to provide coverage of the services in its plan. This would render meaningless the specific listing of section 1396d(a)(2)(C) under the list of services a state must provide in its plan pursuant to 42 U.S.C. § 1396a(a)(10)(A). Under Defendants' interpretation of section 1396d(a)(2)(C), the provision would not require a state to cover any FQHC services. Interpreting the phrase, "which are otherwise included in the plan," to modify only the phrase "and any other ambulatory services offered by a Federally-qualified health center," would not defeat section 1396a(a)(10)(A)'s reference to section 1396d(a)(2)(C) as a mandatory service that a state is required to include in its plan.[6]

In addition, Congress did provide a list of optional services that States could cover. That list is contained at section 1396d(a)(6)-(16), (18)-(20), (22)-(27). *See* 42 U.S.C. § 1396a(a)(10)(A). If Congress had intended to make coverage of FQHC services optional,

---

[6] While this Court is not presented with the complete elimination of FQHC physicians' services as was the case in *Douglas*, it is noteworthy that the *Douglas* court concluded section 1396a(bb)(1) "imposes a mandatory obligation, stating that the plan '*shall* provide for payment for services'" described in section 1396d(a)(2)(C) furnished by a FQHC. 738 F.3d at 1013 (emphasis in original).

it could have included that category of provider services in the list of optional coverage. The statute would need only identify FQHC services among the listed optional services. Congress did not do so, instead specifically listing FQHC services under those services a state plan for medical assistance must provide for. 42 U.S.C. § 1396a(a)(10)(A).

Finally, reading the phrase "which are otherwise included in the plan" to modify only the phrase "and any other ambulatory services" gives effect to the phrase. It is undisputed that Medicaid does not provide for mandatory coverage for all FQHC services, including ambulatory services. Because FQHCs may provide both mandatory and optional services, the phrase "and which are otherwise included in the plan," is necessary to modify the phrase "and any other ambulatory services offered by a Federally-qualified health center." Read in this manner, the phrase clarifies that a state need not reimburse FQHC's costs in furnishing optional services which are not otherwise covered by the state's plan. As Plaintiffs explain in their Opposition, (doc. 25, p. 15), there are a number of optional services that may be provided by a FQHC that fall outside the scope of mandatory FQHC services defined in § 1396d(*l*)(2). In fact, "ambulatory services" covers a broad category of outpatient services.

For the foregoing reasons, the Court concludes that the phrase "which are otherwise included in the plan," modifies only the immediately preceding phrase, "and any other ambulatory services offered by a Federally-qualified health center." Thus, Defendants cannot rely on section 1396d(a)(2)(C) as a basis for excluding mandatory coverage of FQHC Services.

**B.   Plaintiffs fail to state a claim for relief in Count I**

In Count I, Plaintiffs claim that Defendants violate § 1396a(bb) of the Medicaid Act and binding Ninth Circuit precedent in *Douglas* by failing to reimburse FQHCs 100% of their reasonable and related costs in furnishing the Services. (Doc. 1, ¶¶ 50-53.) Plaintiffs argue that Arizona is violating the Medicaid Act by excluding coverage for the categories of service that *Douglas* requires states to provide. (*See* Doc. 9, pp. 7, 20.) Plaintiffs request that the Court issue an order compelling AHCCCS to reimburse FQHCs pursuant to 42

U.S.C. § 1396a(bb) for their "physicians' services," which include the services of dentists, podiatrists, optometrist, and chiropractors furnished by a FQHC to a Medicaid beneficiary as a patient of the FQHC. (Doc. 9, p. 30.)[7]

Accepting Plaintiffs' allegations as true, as the Court must on a motion to dismiss, the Court concludes that Plaintiffs fail to allege facts sufficient to establish that Arizona's plan, on its face, violates the Medicaid Act. The *Douglas* court's holding is not as broad as Plaintiffs contend. In *Douglas*, it was undisputed that California *completely* eliminated coverage of the Services, believing under the Medicaid definition of "physicians' services" that the Services were optional. The *Douglas* court disagreed with California's definition of physicians' services and held that the more expansive definition in the Medicaid Act applied.

Here, unlike *Douglas*, Arizona has not completely excluded coverage of the Services. Arizona's plan provides limited adult dental and optometry services. Additionally, podiatry services are available to Medicaid recipients upon authorization by a primary care provider. The only category of physicians' service which Arizona does not cover is adult chiropractic.[8] But there is no indication that Arizona, like California in

---

[7] At oral argument, Plaintiffs argued that Arizona virtually imposes a blanket exclusion of adult preventive services by dentists, podiatrists, optometrists, and chiropractors.
> "Preventive services" means services recommended by a physician or other licensed practitioner of the healing arts acting within the scope of authorized practice under State law to—
> (1) Prevent disease, disability, and other health conditions of their progression;
> (2) Prolong life; and
> (3) Promote physical and mental health and efficiency.

42 C.F.R. § 440.130(c). "The preventive aspects of some services (such as outpatient hospital services, clinic services, and dental services) are specifically included in the definition of those services in Medicaid regulations." Centers for Medicare and Medicaid Services, *The State Medicaid Manual*, Ch. 4, p. 4385, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Paper-Based-Manuals-Items/CMS021927 (last visited March 19, 2021). "In addition to including preventive care as an integral part of other covered services, each State has the option of covering preventive care as a separate benefit under its Medicaid program, as authorized by sections [1396d(a)(13) and 1396a(a)(10)]." *Id.*; *see also* 42 C.F.R. § 440.225 (defining optional services).

[8] Medicare's definition of physicians' services (which Medicaid imports) does not encompass every chiropractic service; it includes chiropractors "but . . . only with respect to treatment by means of manual manipulation of the spine (to correct a sublaxation)." 42 U.S.C. § 1395x(r)(5).

*Douglas*, excludes coverage of adult chiropractic services solely because Arizona does not consider chiropractic services to be covered FQHC physicians' services. Moreover, Arizona's lack of coverage of one of the four types of covered physicians' services does not constitute a complete exclusion of FQHC "physicians' services" like that addressed by the *Douglas* court. Notably, *Douglas* did not delineate the precise scope of the Services that states must cover. Indeed, when discussing the framework of the Medicaid statute, the *Douglas* court stated: "Each state has discretion to create reasonable standards for determining eligibility for medical services and the extent of those services, provided those standards comply with federal law." 738 F.3d. at 1010 (citing *Schweiker v. Gray Panthers*, 453 U.S. 34, 36-37 (1981)). Thus, the fact that Arizona does not cover specific kinds of services, for example preventive services, cannot, in and of itself, be said to be a violation of *Douglas*.

In fact, the parties agree that states may place limitations on the Services based on criteria such as medical necessity or on utilization control procedures, with certain exceptions.[9] At oral argument, Plaintiffs stated that they are not challenging Arizona's ability to place limitations on the Services and this case is not about application of utilization controls. The essence of Plaintiffs' claim is that Arizona is broadly excluding

---

[9] The regulations authorize States to "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures," so long as they do not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible beneficiary solely because of the diagnosis, type of illness, or condition. 42 C.F.R. § 440.230(c), (d). Courts have upheld various state limitations on Medicaid services, finding that the limitations complied with federal law. *See e.g.*, *Detgen v. Janek*, 752 F.3d 627, 631 (5th Cir. 2014) (upholding state's "categorical exclusion" of ceiling lifts as assistive medical equipment based on the availability of cost-effective alternatives); *Mendocino Cmty. Health Clinic v. State Dep't of Health Care Servs.*, 155 Cal.Rptr.3d 923 (Ct. App. 2013) (holding that "[f]ederal law does not prohibit a state's application of utilization controls to psychology services rendered at an FQHC.").
The Court notes that while Plaintiffs assert that Arizona must pay for "medically necessary" mandatory services, (*see* doc. 25, p. 16), Plaintiffs do not allege that the broad range of services for which they seek 100% reimbursement are all medically necessary. The Supreme Court has stated that while "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage, it is hardly inconsistent with the objectives of the Act for a State to refuse to fund unnecessary though perhaps desirable medical services." *Beal v. Doe*, 432 U.S. 438, 444-45 (1977). "Nothing in the [Medicaid] statute suggests that participating States are required to fund every medical procedure that falls within the delineated [mandatory] categories of medical care." *Id.* at 441.

categories of services that *Douglas* requires states to provide. The Court does not agree. As noted above, Arizona provides for some coverage of the Services. Because Plaintiffs agree that mandatory Services can be limited, the Court cannot conclude that Arizona impermissibly categorically excludes FQHC Services in violation of the Medicaid Act and *Douglas*, as alleged by Plaintiffs in their Complaint. Accordingly, the Court finds that Plaintiffs fail to state a claim for relief in Count I.[10]

### C. Plaintiffs state a claim for relief in Count II, but are not entitled to a preliminary injunction

In Count II, Plaintiffs allege that Arizona's $1,000 limit on adult emergency dental services is an arbitrary and capricious infringement on FQHCs' payment rights under § 1396a(bb) for services "immediately required due to an unforeseen illness, injury, or condition." (Doc. 1, ¶ 55 (quoting 42 U.S.C. § 1396b(m)(2)(A)(vii).) Plaintiffs allege that the limitation is arbitrary and capricious because it is not based on any degree or consideration of medical necessity and functions to limit costs and deny coverage without exception.[11]

Defendants move to dismiss the Complaint, but Defendants' Motion makes no argument specific to Plaintiffs' allegations in Count II.[12] In their proposed form of order, Defendants request that the Court consider Count II as subsumed in Plaintiffs' general request for declaratory and injunctive relief because Plaintiffs request no relief specific to the challenged limitation. (Doc. 46, p. 5 n. 3.) Defendants point out in their proposed form

---

[10] Because the Court agrees with Defendants that Plaintiffs fail to state a claim, the Court does not address Defendants' alternative arguments that Medicaid's comparability requirement and the approval of Arizona's Medicaid plan by the Centers for Medicare and Medicaid Services (CMS) support dismissal of Count I.

[11] Plaintiffs' proposed form of order does not specifically address Count II. At oral argument, Plaintiffs' counsel stated that Count II was not addressed separately in the pending motions and that it is "sort of a subset" of Count I. Plaintiffs' counsel also stated that the Court "can do a thumbs up or a thumbs down decision" on whether Plaintiffs have met their burden to show the limit is arbitrary.

[12] The Court notes that Defendants' Reply distinguishes a case Plaintiffs cite in their response to Defendants' Motion when generally discussing Arizona's limits on dental care. (Doc. 26, pp. 7-8.)

of order that CMS approved Arizona's limitation on emergency dental benefits. (*Id.* at p. 5.)

Unlike Count I's allegations that Arizona imposes a blanket exclusion of the Services, Count II does challenge a specific limitation on an alleged covered, medically necessary service. Defendants' Motion to Dismiss does not address whether Plaintiffs have failed to allege a claim based on an arbitrary and capricious cap.[13] Accordingly, the Court will deny Defendants' Motion to Dismiss Count II.

The Court will deny Plaintiffs' Motion for Preliminary Injunction on Count II. At oral argument, Plaintiffs stated that the Court could determine as a legal matter whether Plaintiffs have met their burden of showing that the cap is arbitrary. However, Plaintiffs' Motion for Preliminary Injunction does not specifically address Count II. Accordingly, on the instant record, the Court cannot determine that Plaintiffs make the required showings for preliminary injunction and are likely to prevail on Count II.

## III. Conclusion

When granting a motion to dismiss, the district court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *See Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). Because the Court cannot conclude that amendment would be futile, the Court will dismiss Count I with leave to amend.

Accordingly, for the foregoing reasons,

---

[13] The Court is not persuaded that CMS's approval of Arizona's plan precludes Plaintiffs' challenge to the limitation. Defendants' argument that CMS's approval of Arizona's plan is entitled to deference on the issue whether states may limit the Services in accordance with other provisions of the Medicaid Act, (*see* Doc. 18, pp. 10-14), is not relevant to whether Plaintiffs state a claim in Count II. Plaintiffs' claim is not about whether states may limit Medicaid services, it is about whether Arizona's limitation on emergency dental services is arbitrary and capricious in violation of the Medicaid Act.
The Court is also unpersuaded that the comparability requirement prevents Plaintiffs' challenge to the limitation. Medicaid's comparability provision requires that "medical assistance made available to any individual . . . shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual." 42 U.S.C. § 1396a(a)(10)(B)(i); *see also* 42 C.F.R. § 440.240. Defendants do not discuss the comparability requirement with specific regard to Count II. Further, the Court does not see how the comparability requirement is at issue. A determination that the limitation is arbitrary and capricious in violation of the Medicaid Act would necessarily invalidate the limitation regardless to whom it applied.

IT IS ORDERED:

1. Defendants' Motion to Dismiss (Doc. 18) is GRANTED IN PART and DENIED IN PART. Defendants' Motion is granted as to Count I. Defendants' Motion is denied as to Count II.
2. Plaintiffs are GRANTED leave to amend the complaint consistent with this Order within thirty (30) days of the filing date of the Order.
3. Plaintiffs' Motion for Preliminary Injunction (Doc. 9) is DENIED.
4. Plaintiffs' Motion for Leave to Supplement Plaintiffs' Motion for Preliminary Injunction (Doc. 48) is DENIED.

Dated this 19th day of March, 2021.

*Honorable Jennifer G. Zipps*
*United States District Judge*