IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance For Community Health Centers, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Arizona Health Care Cost Containment System, et al., <br><br> Defendants. | No. CV-19-00517-TUC-JGZ <br><br> **ORDER** |

In this action, Plaintiffs allege that the Arizona Health Care Cost Containment System ("AHCCCS") and its director, Carmen Denise Heredia, (collectively, "Arizona"), violated 42 U.S.C. § 1396a(bb) and controlling precedent by failing to reimburse Federally Qualified Health Centers ("FQHCs") for services provided by dentists, podiatrists, optometrists, and chiropractors. (Doc. 1.) On remand from the Ninth Circuit, this Court was directed to determine whether the Centers for Medicare and Medicaid Services ("CMS") approved Arizona's interpretation of its State Plan through reasoned decision-making. *Ariz. All. for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys.*, 47 F.4th 992, 1005 (9th Cir. 2022) (hereafter "*Ariz. All.*").

The issue now before the Court is whether Arizona has produced evidence showing that, through its submission of State Plan Amendments ("SPAs") or related communications, it provided CMS with sufficient notice of its intent to apply limitations governing optional Medicaid benefits to the mandatory FQHC adult dental, optometry, and

podiatry services. After reviewing the expanded record, the Court concludes that Arizona has not done so. Accordingly, summary judgment will be entered in favor of Plaintiffs.

### I. Facts

The Medicaid Act requires the Secretary of the Department of Health and Human Services ("HHS") to approve all state Medicaid plans. 42 U.S.C. § 1396a(b). The Secretary has delegated that authority to CMS. *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1241–42 (9th Cir. 2013) (citing 42 C.F.R. § 430.15(b)). A state may not participate in Medicaid without an approved state plan, and its plan "must comply both with statutory requirements imposed by the Medicaid Act and with regulations promulgated by the Secretary of [HHS]." *Id.* at 1248; *Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 935 (9th Cir. 2005).

Plaintiff Arizona Alliance for Community Health Centers ("AACHC") is an Arizona nonprofit organization that promotes access to affordable, community-based primary health care. (PSOF ¶ 1; DSOF ¶ 1.)[1] The remaining Plaintiffs are Arizona nonprofit organizations, members of AACHC, Section 330 health centers, and FQHCs participating in Arizona's Medicaid program. (PSOF ¶ 2; DSOF ¶ 2.)

Defendant AHCCCS is the State of Arizona's "single state agency" that administers and is responsible for Arizona's Medicaid program. (PSOF ¶ 7; DSOF ¶ 7.) To participate in Medicaid, Arizona submitted a State Plan to CMS, which became eligible for Federal Financial Participation ("FFP") upon CMS's approval of the plan. (PSOF ¶¶ 10–11; DSOF ¶¶ 10–11.) A State Plan must provide that it will be amended whenever necessary to reflect "[c]hanges in Federal law, regulations, policy interpretations, or court decisions" or "[m]aterial changes in State law, organization, or policy, or in the State's operation of the Medicaid program." (PSOF ¶ 12; DSOF ¶ 12.)

States may amend their plans through SPAs, which involves the state Medicaid agency submitting individual pages of the State Plan reflecting the revisions. (PSOF ¶ 13;

---

[1] The facts are taken from Plaintiffs' Statement of Undisputed Material Facts, (Doc. 143), cited as (PSOF ¶ [ ]); and Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts and Counter-Statement of Material Facts Not in Dispute, (Doc. 146), cited as (DSOF ¶ [ ]).

DSOF ¶ 13.) CMS reviews SPAs for compliance with federal law and may discuss any issues with the state Medicaid agency and request additional information before approval. (PSOF ¶¶ 14–16; DSOF ¶¶ 14–16.) A SPA is considered approved unless, within 90 days of receipt of the SPA, CMS sends the state a written notice of disapproval or a request for additional information. (PSOF ¶ 17; DSOF ¶ 17.)

Each participating state must include certain specified services in its State Plan, referred to as "required" or "mandatory" benefits. 42 U.S.C. § 1396a(a)(10); 42 C.F.R. §§ 440.210, 440.220. FQHC Services is a mandatory Medicaid benefit under 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(2)(C). (PSOF ¶ 19; DSOF ¶ 19); *Ariz. All.*, 47 F.4th at 1000. The mandatory FQHC Services benefit includes services furnished by dentists, podiatrists, optometrists and chiropractors. (PSOF ¶ 21; DSOF ¶ 21.) Each State must cover the mandatory FQHC Services, which are otherwise included in the State Plan and must reimburse FQHCs on a per-visit basis for the reasonable costs of providing covered services. *Ariz. All.*, 47 F.4th at 998-99; (PSOF ¶ 20; DSOF ¶ 20.)[2]

When this action commenced, Arizona's Medicaid plan provided no coverage for adult chiropractic services furnished by FQHCs and limited coverage for FQHC dentist, podiatry, and optometry services.[3] *Ariz. All.*, 47 F.4th at 996–97.

---

[2] Defendants dispute the calculation of the costs that are reimbursable to FQHCs under the statute, but not that it is mandatory for the State to reimburse FQHCs for such costs pursuant to the Medicaid Act. (DSOF ¶ 20.)

[3] Arizona's Medicaid plan covered the following dental, podiatry, optometry, and chiropractic services:

- Dental services for children under 21 and limited emergency and non-emergency dental services for elderly and developmentally disabled beneficiaries in long-term care facilities. Emergency dental services for adults (such as medically necessary extraction or treatment for an acute infection) up to $1,000 per year.

- Adult podiatry services if those services are ordered by a primary care provider and the authorization is documented in the medical record.

- Optometry services for "[r]outine and medically necessary vision services, including examinations and the provision of prescriptive lenses" for beneficiaries under the age of 21. For adults, examination and treatment of medical conditions of the eye, and prescriptive lenses only when used as the sole prosthetic device following cataract surgery.

- Chiropractic services for children under 21 years of age.

A. Arizona's FQHC Coverage

In 1999, CMS approved SPA 99-04, a portion of Arizona's State Plan which added a single limitation to the mandatory FQHC Services benefit: "authorization by appropriate entity as defined in the Limitations section of [Attachment 3.1-A of the State Plan]."[4] (PSOF ¶ 27; DSOF ¶ 27.) The limitation on FQHC Services was denoted by a double asterisk placed after the checkbox for "Provided: With Limitations" with respect to the FQHC Services benefit. (PSOF ¶ 27; DSOF ¶ 27; Doc. 146-5.) When submitting SPA 99-04, Arizona explained that "[s]ervices which have the single limitation of 'authorized by an appropriate entity' are identified with two asterisks after 'limitations' and are not included in the Limitations section." (PSOF ¶ 29; DSOF ¶ 29.) Other than this submission, AHCCCS has never discussed the meaning of the "double-asterisk" limitation with CMS. (PSOF ¶ 30; DSOF ¶ 30.)

Arizona's State Plan contains no express limitations on the mandatory FQHC Services benefit beyond SPA 99-04. (PSOF ¶ 31; DSOF ¶ 31.)[5] Even so, Defendants maintain that "the limitations that apply to physician services, chiropractic services, [and] dental services, [found elsewhere in the State Plan] also apply" to mandatory FQHC Services. (PSOF ¶ 32; DSOF ¶ 32.) Defendants acknowledge that the State Plan does not explicitly authorize this interpretation and concede it is unclear from the Plan whether the Defendants' interpretation is correct. (PSOF ¶¶ 33–34; DSOF ¶¶ 33–34.)

Arizona has never sought explicit CMS approval to apply these additional limits to the mandatory FQHC Services benefit. Instead, it relies on its "long-standing and

---

*Ariz. All.*, 47 F.4th at 996–97.

[4] Arizona State Plan Attachment 3.1-A Limitations defines "appropriate entity" as either a primary care provider, a physician specialist or dentist, a health plan, a program coordinator, a Regional Behavioral Health Authority, or an Arizona Long Term Care System (ALTCS) case manager affiliated with a program contractor. (PSOF ¶ 28; DSOF ¶ 28.)
[5] Defendants dispute this characterization but rely on only that Arizona's longstanding "interpretation of its state plan [] that the limitations on covered services described in Attachment 3.1-A [SPA 99-04] of its state plan apply when those services are provided in a FQHC and reimbursed as a FQHC service." (DSOF ¶ 31.)

consistent interpretation" of SPA 99-04. (PSOF ¶ 35; DSOF ¶ 35.)[6] As a result, Arizona reimburses FQHCs for adult dental, podiatry, and optometry services only when those services are included elsewhere in the State Plan. (PSOF ¶ 38; DSOF ¶ 38.)

B. CMS Approval of Plan Limitations

CMS approved Arizona's SPA 16-004 in 2016. (Doc. 146-5 at 3.) In that submission, Arizona represented that "[t]here are no limits in amount, duration and scope to podiatrists' services." (PSOF ¶ 59; DSOF ¶ 59.) In practice, however, Arizona limits adult podiatry services to no more than "two visits per quarter or eight visits per contract year" for medically necessary routine footcare.[7] (PSOF ¶ 60; DSOF ¶ 60.) SPA 16-004 does not state that these limits apply to FQHC Services. (Doc. 146-5 at 3.)

In 2018, CMS approved SPA 17-008, which imposed limits on adult dental services. (Doc 146-2 at 8.) SPA 17-008 does not state that the dental limitations apply to FQHC Services. (*Id.*) As implemented by Arizona, the State Plan provides no coverage for non-emergency or preventive adult dental services for non-ALTCS[8] adult beneficiaries, either as an optional service or as a component of the mandatory FQHC Services benefit. (PSOF ¶ 51; DSOF ¶ 51.) The record contains no evidence that Arizona submitted a SPA seeking CMS approval to apply these dental limitations to FQHC Services. (Doc. 146-2 at 8.)

CMS approved SPA 11-006 in 2012, which limited optometry services, and later approved SPA 22-018 in 2022, which superseded it. (Docs. 33-3 at 6; 146-5 at 4.) At the time of the Ninth Circuit's review, Arizona limited adult optometry coverage to treatment of medical eye conditions and provided prescriptive lenses only following cataract surgery. *Ariz. All.*, 47 F.4th at 997. Neither SPA states that these optometry limitations apply to

---

[6] Although Defendants dispute the authority cited by Plaintiffs, Defendants do not dispute Plaintiff's assertion that Arizona has not sought approval from CMS through the submission of a SPA to limit the mandatory FQHC Services benefit. (DSOF ¶ 35.)

[7] Arizona disputes the Plaintiffs' fact as written, clarifying that the limitations do not apply to all podiatry services, but only medically necessary "routine footcare." (DSOF ¶ 60.)

[8] ALTCS, or "Arizona Long Term Care System," is a program through which AHCCCS provides "health insurance for individuals who are age 65 or older, or who have a disability, and who require nursing facility level of care," and covers services "provided in an institution or in a home or community-based setting." (PSOF ¶ 49; DSOF ¶ 49.)

FQHC Services. (Docs. 33-3 at 6; 146-5 at 4.) The record contains no evidence that Arizona sought CMS approval to apply these limits to FQHC optometry services. (Doc. 146-5 at 4.)

C. Evidence of CMS's "Reasoned Decision-making"

During discovery, Plaintiffs requested communications between AHCCCS and CMS that would support applying limitations to the mandatory FQHC Services benefit. (PSOF ¶ 70; DSOF ¶ 70.) AHCCCS identified several communications with CMS, but none show that Arizona asked CMS to approve its application of limitations from other Medicaid benefit categories to mandatory FQHC Services. (PSOF ¶¶ 71–72; DSOF ¶¶ 71–72.)

When asked to identify all SPAs supporting its position that CMS approved Arizona's limitations on FQHC Services mandatory benefit, Defendants objected to the premise that "specific [SPAs] rather than the State Plan as a comprehensive and inter-related document" support that argument. (PSOF ¶¶ 73–74; DSOF ¶¶ 73–74.) AHCCCS nonetheless identified five SPAs: SPA 99-04, SPA 16-004, SPA 13-014, SPA 22-0018, and SPA 17-008. (PSOF ¶ 75; DSOF ¶ 75.) There is no evidence that when AHCCCS sought approval for these SPAs, CMS requested information about how the proposed limitations would apply to the mandatory FQHC Services benefit. (PSOF ¶ 76; DSOF ¶ 76.)

**II.   Discussion**

A. Procedural Posture

On September 2, 2022, the Ninth Circuit vacated in part and reversed in part the grant of Defendants' Motion to Dismiss. *See Ariz. All.*, 47 F.4th 992. The court held that Arizona must cover each component of the mandatory FQHC Services benefit, although certain limitations may be permissible. *Id.* at 1001. The court concluded that Arizona categorically excluded adult chiropractic services in violation of the Medicaid Act. *Id.* at 1001–02 (citing *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1010 (9th Cir. 2013)).

The Ninth Circuit then addressed whether Arizona's limitations on podiatry, optometry, and dental services are permissible under the Act. *Id.* at 1002. In doing so, the court examined whether CMS had articulated reasons for approving the SPAs that Arizona contends authorize the limitations it applies to the mandatory FQHC Services benefit. *Id.* The court found that the record "lacks *any* evidence about CMS's reasoning for approving Arizona's [Medicaid] plan and SPAs" and remanded the case so the parties could further develop the record and so this Court could "rule in the first instance on whether Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of 'FQHC services,' are entitled to *Chevron* deference." *Id.* at 1005 (emphasis in original).

Following remand, the Parties engaged in additional factfinding consistent with the Ninth Circuit's directive. The matter is now before the Court on the parties' cross-motions for summary judgment, which have been fully briefed. (Docs. 142, 145, 152, 154.)

In the interim, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984). *Loper Bright Enters. v. Raimondo,* 603 U.S. 369 (2024). The Court held that reviewing courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 412. Accordingly, the Court must determine whether Arizona's limitations on FQHC Services are entitled to any form of deference, including *Skidmore* deference,[9] by virtue of CMS's approval of the Plan and the SPAs. *Id.* at 392–94.

For the reasons set forth below, the Court concludes that CMS did not approve Arizona's limitations on FQHC Services and that Arizona's interpretation of its Plan violates the Medicaid Act.

---

[9] Under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), a court "may properly resort" to an agency's interpretation "for guidance," as such interpretations constitute "a body of experience and informed judgment." *Garcia v. Holder*, 659 F.3d 1261, 1266–67 (9th Cir. 2011) (quoting *Skidmore*, 323 U.S. at 140). The measure of deference varies "depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore*, 323 U.S. at 140. Although an agency's interpretation is "not controlling," it may still have "power to persuade." *Id.* "Where [an agency's] decision does not give thorough reasoning, but instead is conclusory or lacks meaningful analysis, [courts] give that decision only limited deference." *Garcia*, 659 F.3d at 1267.

B. Analysis

An agency action cannot carry the force of law where the agency "has failed to provide even a minimal level of analysis" such that its reasoning can be understood. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). The Ninth Circuit previously held that the record "lacks *any* evidence about CMS's reasoning for approving Arizona's plan and SPAs" as they relate to limitations on mandatory FQHC Services. *Ariz. All.*, 47 F.4th at 1004–05. The expanded record does not cure that deficiency.

SPA 99-04 is the only SPA that expressly addresses FQHC Services. It added a single limitation: "authorization by appropriate entity." (Doc. 33-3 at 1.) Nothing in SPA 99-04 states or suggests that limitations applicable to other Medicaid benefit categories would also apply to FQHC Services. Arizona did not inform CMS that it understood SPA 99-04 to permit future limitations adopted elsewhere in the State Plan to apply to the mandatory FQHC Services benefit. Therefore, the Court disagrees with Arizona's argument that CMS's approval of SPA 99-04 authorized it to apply limitations governing optional benefits to mandatory FQHC Services. (*See* PSOF ¶ 32, DSOF ¶ 32). Federal law requires a state to amend its plan whenever there is a material change in how the program operates. *See* 42 C.F.R. § 430.12(c)(1)(ii). Yet Arizona never submitted a SPA stating that limits adopted for optional benefits would also apply to mandatory FQHC Services.

Arizona also concedes that it is unclear—based on the SPAs themselves and its communications with CMS—whether CMS ever understood or considered that the "double-asterisk" limitation in SPA 99-04 would allow Arizona to apply limitations adopted in later SPAs to mandatory FQHC Services. (PSOF ¶¶ 33–35; DSOF ¶¶ 33–35.) None of the later SPAs relied on by Arizona mention FQHC Services, reference SPA 99-04, or state that limitations on optional Medicaid benefits would apply to FQHC podiatry (*see* Doc. 146-3 at 3), dental (*see* Doc. 146-2 at 8), or optometry (*see* Doc. 146-5 at 4) services.

Arizona has also failed to produce any evidence outside the SPAs showing that CMS was otherwise informed of, or approved, Arizona's interpretation. Despite targeted

discovery, the record contains no emails, letters, or analysis correspondence, analysis, or explanation showing that Arizona informed CMS it intended to treat FQHC Services as dependent on coverage rules for optional Medicaid benefits, or that CMS evaluated or approved that approach. Arizona relies only on its own "long standing and consistent interpretation" of SPA 99-04—an interpretation never presented to CMS. (PSOF ¶ 35; DSOF ¶ 35.)

On this record, Arizona fails to show that CMS approved its limits on mandatory FQHC dental, optometry, and podiatry services through reasoned decision-making. CMS approval of a SPA, without evidence that CMS considered how the limits would apply to mandatory FQHC Services, cannot be treated as approval of Arizona's interpretation. *See Ariz. All.*, 47 F.4th at 1004–05.

Nor is Arizona's interpretation entitled to *Skidmore* deference. Under *Skidmore*, agency interpretations may be given weight only to the extent they reflect the agency's "experience and informed judgment," as shown by the thoroughness its consideration, the validity of its reasoning, and its consistency over time. *Skidmore*, 323 U.S. at 140. Here, there is no agency judgment to evaluate. The record contains no explanation from CMS, no analysis, and no statement reflecting CMS's understanding of § 1396a(bb) or how Arizona's limitations would apply to mandatory FQHC Services. Because CMS did not articulate any interpretation or reasoning on this issue, there is nothing for the Court to weigh or credit under *Skidmore*.

The Supreme Court's decision in *Loper Bright* does not change this result. Arizona argues that *Loper Bright* allows this Court to independently decide whether Arizona's interpretation violates § 1396a(bb), even if CMS did not approve the limitations through reasoned decision-making. (Doc. 145 at 9–10.) That argument fails.

*Loper Bright* confirms that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412. However, *Loper Bright* did not eliminate the Medicaid Act's requirement that CMS approve state plans and plan amendments. *See* 42 U.S.C. § 1396a(b). Nor did it permit

1 states to enforce unapproved limitations on the mandatory FQHC Services benefit. Whether or not *Chevron* applies, Arizona may not impose limits on mandatory FQHC Services unless CMS approved those limits through the required process. The record shows CMS did not do so here.

The Medicaid Act assigns plan approval authority to the Secretary of HHS, a duty that has been delegated to CMS—not to the State and not to the Court. *See* 42 U.S.C. § 1396a(b). And Arizona's assertion that its plan complies with the Medicaid Act is not entitled to deference. *See Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495 (9th Cir. 1997) ("A state agency's interpretation of federal statutes is not entitled to the deference afforded a federal agency's interpretation of its own statutes.").

Arizona also argues that because dental, optometry, and podiatry services appear elsewhere in the State Plan as optional benefits, CMS approval was not required to apply those limits to FQHC Services. (Doc. 145 at 15-18.) The Ninth Circuit has already rejected that argument. *Ariz. All.*, 47 F.4th at 1000–02.

In sum, there is no genuine dispute of material fact, and the expanded record shows that CMS did not approve Arizona's interpretation through reasoned decision-making. The Court therefore grants Plaintiffs' Motion for Summary Judgment (Doc. 142) and denies Defendants' Cross-Motion (Doc. 145). The limitations Arizona applies to mandatory FQHC Services were not approved by CMS and violate Plaintiff FQHCs' § 1396a(bb) payment rights.

//
//
//
//
//
//
//
//

Accordingly,

**IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Summary Judgment (Doc. 142) is **granted**.
2. Defendants' Cross-Motion for Summary Judgment (Doc. 145) is **denied**.
3. Defendants Arizona Health Care Cost Containment System (AHCCCS) and Carmen Heredia, in her official capacity, are permanently enjoined from enforcing or applying limitations on mandatory FQHC dental, optometry, and podiatry services that were not approved by CMS, as required by the Medicaid Act.
4. Any such limitations are **set aside.**
5. Nothing in this Order precludes Plaintiffs from seeking appropriate monetary relief, including recalculation or reimbursement of amounts unlawfully withheld.
6. The Clerk of Court shall enter judgment accordingly and close the case.

Dated this 10th day of March, 2026.

_____
Jennifer G. Zipps
Chief United States District Judge