**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Arizona Alliance For Community Health Centers, et al.,

        Plaintiffs,

v.

Arizona Health Care Cost Containment System, et al.,

        Defendants.

No. CV-19-00517-TUC-JGZ

**ORDER**

On March 12, 2026, the Court granted judgment in favor of Plaintiffs.[1] (Doc. 164.) On April 8, 2026, Defendants[2] filed a Motion to Stay the Judgment Pending Appeal. (Doc. 170.) On April 27, 2026, Plaintiffs filed a Motion for Award of Attorney's Fees. (Doc. 172.) Defendants thereafter filed a Motion to Stay the Deadline to Respond to Plaintiffs' Motion for fees. (Doc. 177.) Both motions are fully briefed. (*See* Docs. 170, 171, 176; Docs. 177, 178, 179.) For the reasons that follow, the Court will deny Defendants' motions.

## I.    BACKGROUND

On September 2, 2022, the Ninth Circuit vacated in part and reversed in part this Court's Order granting Defendants' Motion to Dismiss. *See Arizona All. for Cmty. Health Centers v. Arizona Health Care Cost Containment Sys.*, 47 F.4th 992 (9th Cir. 2022)

---

[1] Plaintiffs are Arizona Alliance for Community Health Centers (AACHC), Arizona nonprofit organizations, members of AACHC, Section 330 health centers, and Federally Qualified Heath Centers (FQHCs) participating in Arizona's Medicaid program.
[2] Defendants are Arizona Health Care Cost Containment System ("AHCCCS") and its director, Carmen Denise Heredia, (collectively, "Arizona").

(hereafter "*Ariz. All.*"). The Ninth Circuit held that Arizona must cover each component of the mandatory FQHC services benefit, although certain limitations may be permissible. *Id.* at 1001. The court also concluded that Arizona's categorical exclusion of adult chiropractic services violated the Medicaid Act. *Id.* at 1001–02 (citing *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1010 (9th Cir. 2013)). In evaluating Arizona's limitations on podiatry, optometry, and dental services, the court examined whether CMS had articulated reasons for approving the State Plan Amendments ("SPAs") that Arizona contends authorize those limitations on mandatory FQHC services benefits. *Id.* at 1002–1005. The court found that "[t]he record lacks *any* evidence about CMS's reasoning for approving Arizona's [Medicaid] plan and SPAs" and remanded the case so the parties could further develop the record and this Court could "rule in the first instance on whether Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of 'FQHC services,' are entitled to *Chevron* deference." *Id.* at 1004–1005 (emphasis in original).

Following remand, the parties engaged in additional factfinding consistent with the Ninth Circuit's directive and filed cross-motions for summary judgment. (*See* Docs. 142, 145, 152, 154.) In a March 12, 2026 Order, this Court granted Plaintiffs' Motion for Summary Judgment and denied Defendants' Cross-Motion for Summary Judgment, concluding that Defendants violated 42 U.S.C. § 1396a(bb) by applying unapproved limitations to mandatory FQHC services. (Doc. 164.) The Court found that CMS did not approve Defendants' interpretation of the State Plan and that the record contained no evidence that CMS considered or authorized applying limitations from optional benefits to mandatory FQHC dental, optometry, and podiatry services. The Court therefore permanently enjoined Defendants from enforcing those limitations.

On March 31, 2026, Defendants timely filed a notice of appeal from the Court's March 12, 2026 Order (Doc. 164) and the Clerk's Judgment (Doc. 165).

//

//

## II.    DISCUSSION

Defendants move to stay the Court's March 12, 2026 Order and Judgment pending appeal. They contend that a stay is warranted because they are likely to succeed on appeal, will suffer irreparable harm absent a stay, and the balance of equities and public interest favor maintaining the status quo. (Doc. 170-1.) Defendants also argue that a stay is warranted because, on March 31, 2026, they filed a SPA with CMS expressly incorporating the service limits applicable to other providers to FQHCs. (*Id.* at 5.) If approved, the SPA would be effective retroactive to January 1, 2026. Plaintiffs oppose the motion, arguing that Defendants have not met the stringent requirements for a stay pending appeal. (Doc. 171.)

### A.  Legal Standard

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citation omitted). Rather, it is "an exercise of judicial discretion," and "the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* In deciding whether to grant a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426 (cleaned up). "The first two factors are the most critical; the last two are reached only once an applicant satisfies the first two factors." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (cleaned up).

Under the Ninth Circuit's sliding scale approach, "the elements of the [] test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1007. When there is a weak irreparable harm showing, the applicant must make a stronger showing of a likelihood of success on the merits. *Id.* at 1010. The Court addresses the irreparable harm factor first because its resolution informs the showing required on the "likelihood of success on the merits" element.

**B. Defendants Have Not Shown Irreparable Harm**

An applicant must show that a stay is necessary to avoid *likely* irreparable injury to the applicant while an appeal is pending. *Id.* at 1007. A mere possibility is insufficient. *Id.* The applicant's irreparable harm burden "is higher than it is on the likelihood of success prong, as [it] must show that an irreparable injury is the more probable or likely outcome." *Id.* "[A] stay may not issue" absent such a showing. *Id.*

Defendants contend they will suffer irreparable harm because the Court's Order requires immediate changes to Arizona's Medicaid program, including revising capitation rates and expending administrative resources that may later need to be undone if the Order is reversed or CMS approves the pending SPA. (Doc. 170-1 at 13–14.) They also assert that implementing the Order could disrupt the Medicaid provider network by shifting utilization toward FQHCs and increasing program costs. (*Id.*)

Defendants cannot transform the burdens of complying with an injunction that remedies a violation of federal law into irreparable injury. The Ninth Circuit has recognized that the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), *rev'd on other grounds sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). That principle applies with full force to each harm Defendants identify. Injuries consisting of compliance costs, administrative burdens, or expenditures of time and resources are generally not irreparable. *See Al Otro Lado*, 952 F.3d at 1008 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough."). The specific harms Defendants identify—revising capitation rates, seeking appropriations, issuing guidance, adjusting program administration, and expending resources to comply with the Court's Order—are precisely the kinds of compliance costs and administrative burdens that do not constitute irreparable harm. Because the Court has determined that Defendants' current reimbursement practices violate federal law, the costs of bringing Arizona's Medicaid program into compliance do not rise to the level of

irreparable injury, however substantial those costs may be.

Defendants characterize these harms as distinct from ordinary compliance costs because they may be required to implement the Court's Order and later unwind those programmatic changes if they prevail on appeal or if CMS approves the pending SPA. (Doc. 176 at 6–7.) But that "implement and undo" theory does not transform compliance with the Court's Order into irreparable harm. These compliance costs and administrative burdens do not become irreparable simply because Defendants may later need to reverse them. The possibility that Defendants may later need to unwind those changes if the Ninth Circuit reverses or if CMS approves the pending SPA remains contingent and does not establish likely, imminent irreparable injury.

Defendants' asserted provider-network harms are also contingent and speculative. Defendants have not shown that implementation of the Order is likely to destabilize Arizona's Medicaid provider network, as opposed to requiring administrative changes and increased reimbursement for services the Court has determined must be covered as mandatory FQHC services. Defendants' argument depends on several contingencies, including that beneficiaries will shift care to FQHCs; non-FQHC providers will reduce Medicaid participation as a result; the Ninth Circuit will reverse this Court's determination; or CMS will approve the pending SPA. Defendants assert that if any of these contingencies occur, they will then need to unwind programmatic changes or seek recoupment.

Although Defendants' declaration expresses concern that implementation may disrupt provider relationships and shift members toward FQHCs, Defendants submit no data, expert analysis, non-FQHC provider declarations, or utilization projections showing that those asserted network harms are likely to occur. (Doc. 170-3 ¶ 8.) Plaintiffs, on the other hand, submit provider declaration evidence addressing that concern in the dental-services context: according to Plaintiffs' evidence, the relationship between FQHCs and private dental practices is not primarily competitive, but instead often requires referrals from private practices to FQHCs. (Doc. 171-2 ¶¶ 19–22.) That evidence cuts against Defendants' assertion that expanded FQHC reimbursement is likely to draw dental patients

away from non-FQHC providers Thus, Defendants' contingent future harms do not satisfy the requirement of a likely, imminent, and irreparable injury.[3] *See Nken*, 556 U.S. at 434 (requiring more than a mere possibility of relief).

Because Defendants' showing regarding irreparable harm is weak, Defendants must make a strong showing of a likelihood of success on the merits in order to obtain a stay. *See Al Otro Lado*, 952 F.3d at 1010. Defendants fail to do so.

**C. Defendants Have Not Shown a Strong Likelihood of Success on the Merits**

Defendants argue that they need not show they are more likely than not to prevail on appeal and that it is sufficient to raise "a substantial case for relief on the merits." (Doc. 170-1 at 10; Doc. 176 at 2–4.) They assert that three arguments they intend to raise on appeal satisfy that standard: (1) the recent case of *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025), undermines *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1013 (9th Cir. 2013), which held that FQHCs may enforce 42 U.S.C. § 1396a(bb) through 42 U.S.C. § 1983; (2) after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the relevant inquiry is whether Arizona's interpretation complies with § 1396a(bb), not whether CMS approved the challenged limitations; and (3) this Court erred in concluding that CMS did not approve the challenged limitations. (Docs. 170-1 at 10–12, 176 at 3–5.)[4] The Court concludes that none of these issues presents "a substantial case for relief on the merits."

**1. *Medina* Does Not Clearly Abrogate Binding Ninth Circuit Precedent**

In *Medina*, the Supreme Court considered whether Medicaid's "any-qualified-

---

[3] Plaintiffs submit evidence that Arizona already maintains a reconciliation process capable of implementing any recoupments that might be necessary if Defendants prevail on appeal, further undermining any claim that recoupment efforts would constitute irreparable harm. (Doc. 171-1 ¶¶ 4–17.) Defendants acknowledge that any additional payments made pursuant to the Court's Order may be recouped if they prevail on appeal. (Doc. 170-1 at 14.)

[4] Defendants incorrectly argue that the parties' dispute over these issues is sufficient to establish a substantial case for relief. (Doc. 176 at 1–2.) The mere existence of disputed legal issues does not, by itself, satisfy Defendants' burden. Otherwise, every contested appeal would satisfy the merits prong. *Nken* requires more than a "mere possibility" of relief, 556 U.S. at 434, and *Leiva-Perez* requires a substantial case for relief on the merits— not merely a showing that the parties disagree. 640 F.3d at 967–68.

provider" provision, 42 U.S.C. § 1396a(a)(23)(A), created a privately enforceable right under § 1983 for individual Medicaid beneficiaries. The court held that it did not because the provision lacked "clear and unambiguous rights-creating language." *Medina*, 606 U.S. at 380. The court explained that § 1396a(a)(23)(A) "speaks to what a State must do to participate in Medicaid" and appears within a subsection outlining "scores of things a state plan must include to qualify for federal funding." *Id.* at 377, 379. The court emphasized that "[a]ll of § 1396a(a)'s requirements are directed to the Secretary of Health and Human Services," unlike the Federal Nursing Home Reform Act provisions at issue in *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), which expressly guaranteed individual "rights." *Id.* at 378–80.

The Supreme Court instructed lower courts to apply the framework articulated in *Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002), and *Talevski* when evaluating whether Spending Clause statutes create privately enforceable rights under § 1983. *Medina,* 606 U.S. at 367–69, 375–76. Specifically, the court explained that "[t]o prove that a statute secures an enforceable right, privilege, or immunity, and does not just provide a benefit or protect an interest, a plaintiff must show that the law in question clearly and unambiguously uses rights-creating terms" and "display[s] an unmistakable focus on individuals like the plaintiff." *Id.* at 368 (internal quotation marks and brackets omitted) (quoting *Gonzaga Univ.*, 536 U.S. at 284, 290). The court also emphasized that "spending-power statutes like Medicaid are especially unlikely" to satisfy this "stringent" and "demanding" standard. *Medina*, 606 U.S. at 368–69.

Defendants assert *Medina* casts doubt on whether 42 U.S.C. § 1396a(bb) creates an enforceable right under 42 U.S.C. § 1983, as the Ninth Circuit held in *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1013 (9th Cir. 2013), and may require dismissal of this action. (Docs. 170-1 at 10–11, 176 at 2–5.) Defendants argue that "in light of *Medina's* clarification of the standard for evaluating whether a statute passed pursuant to Congress's spending power confers a privately enforceable cause of action, it is an open question whether *Douglas* remains good law." (Doc. 176 at 4.) This argument is not

persuasive because *Douglas* applied the standard identified in *Medina*.

Intervening Supreme Court authority must be "clearly irreconcilable" with Ninth Circuit precedent to overrule it. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Defendants' *Medina* argument does not show a likelihood of success on appeal or present a substantial case for relief because *Medina* does not "undercut the theory or reasoning underlying [*Douglas*] in such a way that the cases are clearly irreconcilable." *Id.* *Douglas* applied the same *Gonzaga* framework identified in *Medina,* but to a materially different statutory provision. In *Douglas*, the Ninth Circuit held that § 1396a(bb) reflects Congress's intent to "create new rights enforceable under § 1983 . . . in clear and unambiguous terms." *Douglas*, 738 F.3d at 1013 (quoting *Gonzaga Univ.*, 536 U.S. at 290). The court explained that § 1396a(bb)(1) specifically identifies Federally Qualified Health Centers and Rural Health Clinics as named beneficiaries and provides that state Medicaid plans "shall provide for payment for services" furnished by those entities. *Id.* The court concluded the statutory right to payment "is neither vague nor amorphous," that the statute imposes a mandatory obligation on states, and that the provision "is not general or administrative but contains specific rights-creating language." *Id.* That analysis satisfies the standard *Medina* reaffirmed.

Unlike the provision at issue in *Medina*—which appeared within a list of administrative state plan requirements directed at the Secretary of HHS and "makes perfect sense if it speaks only to a State's duties to the federal government," *Medina*, 606 U.S. at 379—§ 1396a(bb) uses specific payment language directed at an identifiable class of named beneficiaries. *Medina* did not address § 1396a(bb), the FQHC reimbursement framework, or *Douglas*, and did not hold that Medicaid provisions are categorically unenforceable under § 1983. Moreover, every circuit to have considered the issue—whether § 1396a(bb) is enforceable through § 1983—has concluded that it is. *See Douglas*, 738 F.3d at 1012 n.1; *see also Family Health Ctrs. of Sw. Fla., Inc. v. Secretary, Fla. Agency for Health Care Admin.*, No. 23-10992, 2025 WL 1171609 (11th Cir. Apr. 22, 2025) (applying § 1396a(bb) without questioning enforceability); *Legacy Cmty. Health*

*Servs., Inc. v. Smith*, 881 F.3d 358, 371 n.13 (5th Cir. 2018) (collecting cases from First, Third, and Fourth Circuits holding § 1396a(bb) enforceable under § 1983).

### 2.  Defendants' Limitations Violate § 1396a(bb) Both for Lack of CMS Approval and on Their Merits

Defendants argue that, after *Loper Bright*, the Court should have independently determined whether § 1396a(bb) permits Arizona to apply the challenged limitations to FQHC services, without regard to CMS's understanding or interpretation of the limitations and how they were applied to FQHCs. (Docs. 170-1 at 11–12; 176 at 4–5.) Defendants assert their appeal presents a substantial case for relief on the merits by asking the Ninth Circuit to itself interpret and apply the statutory requirements as required by *Loper Bright*. (Doc. 170-1 at 12.) This argument fails for two reasons.

First, *Loper Bright* does not eliminate the statutory and regulatory requirement that a state Medicaid plan, and any material amendment to that plan, be approved by CMS before it may be enforced. *See* 42 U.S.C. § 1396a(b); 42 C.F.R. § 430.12(c). That approval requirement exists independently of *Chevron* deference because it derives from the Medicaid Act and its implementing regulations, not from judicial deference to CMS's interpretation. *Loper Bright* requires courts to exercise independent judgment when interpreting federal statutes and eliminates *Chevron* deference to agency interpretations. *Loper Bright*, 603 U.S. at 412. Thus, even after *Loper Bright*, Arizona may not enforce limitations on the mandatory FQHC services benefit unless those limitations are approved as part of the State Plan and comply with the Medicaid Act. The Court's March 12, 2026 Order did not apply *Chevron* deference. Rather, the Court determined, based on the fully developed record, that Defendants violated § 1396a(bb) by applying limitations to mandatory FQHC services that CMS did not approve and that were not authorized by Arizona's State Plan. (Doc. 164.) Defendants have not shown that *Loper Bright* undermines that conclusion.

Second, setting aside the absence of CMS approval, Defendants have not shown that their proposed limitations would comply with § 1396a(bb)'s substantive requirements even

if CMS had approved or were to approve the limitations, which independently diminishes their argument that they would likely succeed on appeal.[5] Defendants are correct that states have "discretion to impose limitations to eligibility for and the extent of medical services." (Doc. 176 at 5.) The Supreme Court has recognized that the Medicaid Act "gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interest of the recipients.'" *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 665 (2003) (quoting *Alexander v. Choate*, 469 U.S. 287, 303 (1985)). Federal regulations likewise permit states to impose appropriate limits based on medical necessity or utilization-control procedures. 42 C.F.R. § 440.230(d).

But that discretion is not unlimited. While states have considerable discretion to design and administer their Medicaid programs, that discretion exists only so long as the state plan complies with federal Medicaid requirements. *Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 935 (9th Cir. 2005) (*citing Lewis v. Hegstrom*, 767 F.2d 1371, 1373 (9th Cir. 1985)). A covered service must be "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). As the Ninth Circuit explained in this case, although states have discretion to impose limitations on eligibility for and the extent of medical services, exclusions of covered FQHC services, "even if only for adults," are "more akin to impermissible categorical exclusions than mere limitations." *Ariz. All.*, 47 F.4th at 1001.

The Ninth Circuit has held that FQHC services are a standalone mandatory Medicaid benefit and include services furnished by dentists, podiatrists, optometrists, and chiropractors. *Id.* at 995; *Douglas*, 738 F.3d at 1014–16. Thus, the relevant question is not merely whether Arizona may impose some limits; it is whether Arizona's proposed limits

---

[5] The March 12 Order concluded that Defendants violated § 1396a(bb) by applying limitations to mandatory FQHC dental, optometry, and podiatry services that CMS had not approved. (Doc. 164.) That conclusion was sufficient to resolve the parties' cross-motions for summary judgment. Defendants' stay briefing raises a related issue: whether the challenged limitations, even if expressly approved by CMS through the pending SPA, would themselves comply with the Medicaid Act. (Doc. 170-1 at 11–12.) The Court addresses that issue here for purposes of assessing Defendants' likelihood of success on appeal and the effect of potential CMS approval.

preserve the mandatory FQHC services benefit required by § 1396a(bb) and leave those services sufficient in amount, duration, and scope to reasonably achieve their purpose. *See* 42 C.F.R. § 440.230(b), (d). Defendants have not made that showing.

The pending SPA does not appear to create limitations tailored to the mandatory FQHC services benefit. Instead, Defendants represent that the SPA "expressly incorporat[es] the service limits applicable to other providers to federally qualified health centers." (Doc. 170-1 at 5.) But the Ninth Circuit has already rejected Arizona's interpretation of § 1396d(a)(2)(C), which would have required states to cover "only those FQHC services that the state chooses to include in the state Medicaid plan." *Ariz. All.*, 47 F.4th at 998–99. The Ninth Circuit explained that such an interpretation "would enable a state to categorically exclude all coverage for all FQHC services" and "is contrary to the plain language and purpose of the statute." *Id.* at 999. Thus, Defendants' proposed SPA, which merely imports limitations from other provider or benefit categories, would not, without more, establish that Arizona has preserved the mandatory FQHC services benefits required by § 1396a(bb).

Nor have Defendants shown that the proposed limitations would leave the relevant FQHC services sufficient in amount, duration, and scope to reasonably achieve their purpose. Arizona's adult dental limitation restricts coverage to emergency dental services, such as medically necessary extractions or treatment for acute infections, up to $1,000 per year, with limited non-emergency dental coverage for elderly and developmentally disabled beneficiaries in long-term care facilities. *Ariz. All.*, 47 F.4th at 996–97. Its adult optometry limitation covers examination and treatment of medical conditions of the eye and prescriptive lenses only when used as the sole prosthetic device following cataract surgery. *Id.* at 997. Its podiatry limitation covers adult podiatry services only when ordered by a primary care provider and documented in the medical record. *Id.* at 996–97. Some of these restrictions may be permissible utilization controls in the abstract. But Defendants have not shown that, as applied to the mandatory FQHC services benefits, they preserve the covered FQHC dental, optometry, and podiatry services required by § 1396a(bb), or

that they leave those services sufficient in amount, duration, and scope to achieve their purpose. *See* 42 C.F.R. § 440.230(b), (d). Thus, the possibility of future CMS approval of the limitations does not establish a strong likelihood of success on appeal or a substantial case for relief.

### 3. Disagreement with the Court's Factual and Legal Conclusions Does Not Establish a Substantial Case for Relief

Defendants' third argument does not present a substantial case for relief. Defendants disagree with the Court's conclusion that CMS did not approve Arizona's application of optional-benefit limitations to mandatory FQHC services, but they identify no factual error, newly discovered evidence, or intervening legal authority that would call that conclusion into question. The Court's March 12 Order rested on the expanded record developed after remand, including the absence of express language in the State Plan applying optional-benefit limitations to mandatory FQHC Services and Defendants' reliance on Arizona's longstanding interpretation of SPA 99-04 rather than any SPA or CMS communication showing approval of that interpretation. (Doc. 164 at 4, 6, 8–9.) Defendants' disagreement with the Court's application of those facts to the governing legal standard does not establish a substantial case for relief on appeal. A stay is not warranted simply because a party seeks appellate review of a decision with which it disagrees. *See Nken*, 556 U.S. at 433–34.

### D. A Stay Would Substantially Injure Plaintiffs

Because Defendants fail to establish the first two *Nken* factors, the Court need not address the remaining two factors. *See Al Otro Lado*, 952 F.3d at 1007 ("The first two factors are the most critical; the last two are reached only once an applicant satisfies the first two factors.") (cleaned up). Even so, factors three and four also do not support Defendants' request to stay.

The third factor considers "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. Defendants argue that a stay will not substantially injure Plaintiffs because they have historically operated under the existing reimbursement limitations and any delay would result only in reduced

payments. (Doc. 170-1 at 15.) Defendants also contend that, if CMS approves the pending SPA with retroactive effect, Plaintiffs will ultimately be subject to the same limitations regardless. (*Id.*) Plaintiffs respond that a stay would delay their receipt of statutorily required reimbursement for FQHC services and impair their ability to provide care to Medicaid beneficiaries. (Doc. 171 at 17–19.) Plaintiffs also argue that because FQHCs must provide primary health care and related services to patients regardless of ability to pay, unreimbursed Medicaid services force them to subsidize Arizona's Medicaid program with Section 330 grant funds. (*Id.* at 17–18.) Plaintiffs submit evidence that continued underpayment has caused millions of dollars in unreimbursed costs, staffing reductions, underused dental facilities, and risk of further service cuts affecting Medicaid beneficiaries. (Doc. 171-2 ¶¶ 8–10; Doc. 171-3 ¶¶ 14–15; Doc. 171 at 17–19.)

The third factor weighs against a stay. The Court has determined that Defendants' current reimbursement practices violate federal law. A stay would delay enforcement of that determination, postpone payments to which Plaintiffs have been found entitled under federal law and for which they will not otherwise get reimbursed, and require Plaintiffs to continue operating under reimbursement levels that the Court has determined are inconsistent with the Medicaid Act. Plaintiffs are FQHCs that rely on reimbursement for mandatory services under the Medicaid Act. Plaintiffs have shown that continued underpayment has affected and will continue to affect their ability to provide services, including through impacts on staffing, service availability, and access to care for Medicaid beneficiaries. Accordingly, a stay would result in more than minimal injury to Plaintiffs and the populations they serve.

### E. The Public Interest Weighs Against a Stay

Defendants argue that the public interest favors a stay because implementing the Court's Order would destabilize Arizona's Medicaid provider network and require significant administrative adjustments. (Doc. 170-1 at 15–16.) They contend that a stay would preserve the status quo pending appeal. (*Id.*)

As discussed in Section II.B., Defendants' asserted provider-network harms are

speculative, and Defendants have not submitted data, expert analysis, non-FQHC provider declarations, or utilization projections showing that those asserted network harms are likely to occur. In addition, although the Court recognizes Defendants' asserted administrative and budgetary concerns, those concerns do not outweigh the public interest in enforcing federal Medicaid requirements and ensuring access to covered services for Medicaid beneficiaries. *See M.R. v. Dreyfus*, 697 F.3d 706, 737–38 (9th Cir. 2012). The public interest does not favor preserving an unlawful status quo to spare a state the costs of compliance with federal law.

This principle applies with particular force here. As the Court has determined, Defendants' current reimbursement practices violate the Medicaid Act. A stay would delay prospective compliance with the Court's injunction and allow Defendants to continue enforcing reimbursement limitations the Court has found unlawful. The public interest therefore favors implementation of the Court's Order, not continued enforcement of unlawful limitations on mandatory FQHC services.

### F.  Defendants Have Not Justified an Unsecured Stay

Plaintiffs argue that Defendants' motion is procedurally deficient because Defendants have not proposed a bond, alternative security, or other terms that would secure Plaintiffs' rights while the appeal is pending. (Doc. 171 at 3–4.) Defendants respond that Rule 62(d) gives the Court discretion to enter a stay without requiring a bond or other security. (Doc. 176 at 7–8.)

Rule 62(d) permits a court to stay an injunction "on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Courts have discretion to accept security in forms other than a bond. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990); *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985). Where no security is posted, the grant or denial of a stay strictly rests within the district court's discretion. *See Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 193 (9th Cir. 1977). Defendants request an unconditional stay. They have proposed no bond, no alternative security, and no other terms designed to protect Plaintiffs'

rights while the appeal is pending.

Defendants argue that security is unnecessary because Arizona is a solvent sovereign. (Doc. 176 at 7–8.) But Plaintiffs do not seek only to protect the collectability of a money judgment. Plaintiffs seek prospective enforcement of an injunction requiring Defendants to stop applying reimbursement limitations the Court has found unlawful. A stay would delay that prospective compliance and require Plaintiffs to continue providing mandatory FQHC services under reimbursement practices the Court has determined are inconsistent with the Medicaid Act. Arizona's solvency does not address those harms or explain why an unconditional stay would adequately protect Plaintiffs' interests during the appeal.

Defendants further contend that, if the pending SPA is approved retroactive to January 1, 2026, Plaintiffs will not be entitled to additional reimbursement regardless of the appeal's outcome, making any security unnecessary. (Doc. 176 at 8.) But as the Court has explained, Defendants have not shown that the pending SPA would comply with the Medicaid Act's substantive requirements even if CMS approves it. *See supra* Section C.2. The SPA therefore cannot be assumed to eliminate Plaintiffs' interest in prospective compliance with the Court's Order. Defendants have proposed nothing to protect Plaintiffs' rights while the appeal is pending. Their failure to propose any terms that would secure Plaintiffs' rights provides an additional basis to deny the motion.

### III.    Motion to Stay Consideration of Plaintiffs' Motion for Attorney's Fees

Defendants' motion to stay their deadline to respond to Plaintiffs' motion for attorney's fees rests on the same arguments presented in their motion to stay the judgment pending appeal—that the appeal raises serious legal questions with significant potential to affect this Court's consideration of fees. (Doc. 177-1 at 4.)

The Court has concluded that Defendants have not shown a substantial case for relief on the merits of their appeal. That conclusion undermines the principal premise on which the fee-stay motion rests. Therefore, the Court will deny the motion.

Independent of that conclusion, judicial economy favors resolving Plaintiffs' fee

request now. This case has been pending since 2019. Both Fed. R. Civ. P. 54(d)(2)(B) and LRCiv 54.2(b)(2) favor prompt resolution of timely fee requests, and the Ninth Circuit has recognized that a district court retains jurisdiction to consider and award attorneys' fees while a merits appeal is pending. *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956–57 (9th Cir. 1983). Plaintiffs are presently prevailing parties by virtue of the March 12, 2026 Order. The only question remaining is the reasonableness of the fees Plaintiffs incurred—a determination this Court is well-positioned to make while the litigation is fresh in mind. Deferral would serve neither efficiency nor fairness.

## IV.    CONCLUSION

Defendants have not met their burden of demonstrating that a stay pending appeal is warranted. Their irreparable harm showing is weak: the harms they identify are compliance costs, administrative burdens, and speculative network disruptions that do not rise to the level of likely, imminent irreparable injury. Because that showing is weak, Defendants must make a strong showing of likelihood of success on the merits. They have not done so. *Medina* does not clearly abrogate *Douglas*; *Loper Bright* does not eliminate the statutory requirement of CMS approval; and the pending SPA does not alter the analysis because it has not been approved and, even if approved, would not itself establish that Defendants' limitations comply with the Medicaid Act. Defendants' disagreement with this factual and legal conclusions does not establish a substantial case for relief. Under the Ninth Circuit's sliding-scale approach, the weakness of both showings reinforces the conclusion that a stay is unwarranted. *See Al Otro Lado*, 952 F.3d at 1010. The remaining *Nken* factors—substantial injury to other parties and the public interest—independently weigh against a stay: Plaintiffs face concrete harm from continued underpayment and delayed enforcement of the Court's injunction, and the public interest lies in enforcing federal law, not preserving a status quo this Court has determined is unlawful.

//

//

//

- 16 -

Accordingly,

**IT IS ORDERED** Defendants' Motion to Stay Order and Judgment (Doc. 170) and Motion To Stay the Deadline to Respond to Plaintiffs' Motion for Attorney's Fees (Doc. 177) are **DENIED**.

**IT IS FURTHER ORDERED** Defendants must file a response to Plaintiffs' Motion for Attorneys' Fees no later than fourteen days from the date this Order is filed in accordance with LRCiv 54.2 and this Court's Scheduling Order. (Doc. 98 at ¶ 14.)

Dated this 12th day of June, 2026.

Jennifer G. Zipps
Chief United States District Judge